Hand-Delivered



FILED
CHARLOTTE, NC

NOV 20 2023

US DISTRICT COURT
WESTERN DISTRICT OF NC

BILLY TAYLOR
PO BOX 470432
CHARLOTTE, NC 28226-4722
BILLYTAYLOR611@GMAIL.COM
480-200-7888

# THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF NORTH CAROLINA

BILLY TAYLOR,

    Plaintiff,

v.

TEXMAC INC

    Defendant.

Case No. 3:23-cv-792-FDW

Violation of FLSA (29 U.S.C. § 201 *et seq.*)

Retaliation in violation of FLSA 15 (a)(3)

**Jury Trial Demanded**

## COMPLAINT FOR DAMAGES

COMES NOW Billy Taylor ("Taylor"), Plaintiff, in the above-styled civil action, and files his complaint for damages, showing this Court as follows;

//

//

//

- 1 -

## INTRODUCTION

1. Taylor was employed by defendant from April 13, 2020 to April 27, 2023. The job title defendant provided Taylor was Credit Manager. Taylor's job title was credit manager during the entire 3 years of his employment.

2. During his employment Taylor routinely and customarily earned his year-end bonus.

3. On March 9, 2023, Taylor complained of race discrimination and Department of Labor violations that he believed was occurring at Texmac.

4. On or About *April 13, 2023,* the defendant's attorney conducted what could only be deemed a sham investigation regarding Taylor's claims.

5. On *April 27, 2023,* Taylor was advised that he was being terminated for performance by the president of Texmac, Koichiro Nishikawa ("Nishikawa"), but was not told what the performance issue was. Nishikawa offered Taylor a severance package and stated that he would be paid his year-end bonus that Taylor earned prior to his termination.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction to hear this complaint and to adjudicate the claims stated herein under 28 U.S.C. § 1331, this action being brought under the Federal Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"). Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred in this District, and Defendants are subject to personal jurisdiction in North Carolina.

//
//
//

## Parties

7. Defendant is an employer within the meaning of FLSA, 29 U.S.C. § 203(d), and exercised operational control over Taylor during his employment.

8. Taylor is a resident of North Carolina and held the title of Credit Manager while employed by Defendant.

## Factual Allegations

9. Taylor was misclassified as a credit manager and deemed an exempt employee throughout his employment. Taylor did not manage any employees and therefore did not satisfy the Department of Labor's criteria for such an exemption as outlined below. As a result, Taylor is owed back pay all hours worked over 40 in a work week during his employment. The protections the FLSA provides employees is overtime pay, or the right to be paid time and a half for work above the maximum hours set by the Act, generally 40 hours per week. *29 U.S.C. § 207(a); see Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 147 (2012). An employer who violates the FLSA's overtime-pay requirement is liable for unpaid wages and, generally, for an equal amount in liquidated damages. *29 U.S.C. § 216(b)*. The FLSA "plainly envisions that liquidated damages are the norm." *Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir. 1997). But a court may, in its sound discretion, award no liquidated damages" if "the employer shows to the satisfaction of the court" that its violation "was in good faith and that it had reasonable grounds for believing" that its pay practices complied with the FLSA. 29 U.S.C. § 260. One other provision bears on the calculation of damages here. The statute of limitations for FLSA claims usually is two years, putting a "limit on employers' exposure" to liability for unpaid wages and liquidated damages. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132 (1988). But that period is extended to three years if a plaintiff can show that his

employer's violation of the Act was "willful." *29 U.S.C. § 255(a); see Desmond v. PNGI Charles Town Gaming, L.L.C., 630 F.3d 351, 357–58 (4th Cir. 2011).* There is no justification for defendant's willful misclassification of Taylor.

**Department of Labor Exemptions**

**Executive**

a) The employee must be compensated on <u>a salary basis</u> (as defined in the regulations) at a rate not less than $684<u>*</u> per week. (Taylor met this criterion only);

b) The employee's primary duty must be managing the enterprise or managing a customarily recognized department or subdivision of the enterprise. Taylor had no management responsibilities.

c) The employee must customarily and regularly direct the work of at least two or more other full-time employees or their equivalent; and

d) The employee must have the authority to hire or fire other employees, or the employee's suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees must be given weight. Taylor managed no employees and had no authority or input regarding hiring and firing.

**Administrative**

10. The employee must be compensated on a <u>salary</u> or fee basis (as defined in the regulations) at a rate not less than $684<u>*</u> per week (Taylor only met the salary criteria);

a) The employee's primary duty must be the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

-4-

b) The employee's primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. Taylor had no management authority, and no authority to exercise discretion or independent judgement with respect to his job duties.

It is well established that when an employer defends an FLSA action on the ground that its employee falls within a § 213 exemption, it bears the burden of proof on that question and must carry that burden under the "clear and convincing evidence" standard. *See, e.g., Shockley, 997 F.2d at 21* ("Employers must prove by clear and convincing evidence that an employee qualifies for exemption."); *Desmond v. PNGI Charles Town Gaming, 564 F.3d 688, 691 (4th Cir. 2009)* ("[The employer] bore the burden of proving, by clear and convincing evidence, that the [employees'] jobs fell within the administrative exemption." Also see *Taylor v. Grubbs, 930 F.3d 611, 619 (4th Cir. 2019)*.

**Primary Duty**

11. "Primary duty" means the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Taylor was hired and given the title of credit manager. However, Taylor was actually nothing than an Accounts Receivable Representative. His *primary duty* was to contact customers regarding past due accounts. Taylor performed other duties as needed pursuant to company policy and mandate such as reviewing customer credit lines monthly, review credit applications submitted by sales (sales reps did not submit credit applications daily so this was a very small part of Taylor's responsibilities), review credit reports as needed, submit credit lines to Bruce Hodge, VP of Finance and Administration for approval, release orders as

- 5 -

needed pursuant to company guidelines, policies, and management direction. Taylor's primary duties were not evaluating customers, evaluating customer credit worthiness, determining to extend a current customer or potential customer credit or how much credit to extend as alleged by defendants in their misguided response to the United States Department of Labor ("USDOL"). See letter dated August 16, 2023, at pages 2-3, hereafter referred to as ("Letter"), attached hereto as Ex.1. Taylor's primary duties amounted to production work. *See Desmond v. PNGI Charles Town Gaming, L.L.C., 564 F.3d 688, 694-95 (4th Cir. 2009).*

**Extension of Credit to Customers**

15. In the event that a sales representative ("SR") wanted to increase an existing customers credit line or extend credit to a new customer, the SR would complete a credit application for new customers or simply request an increase for existing customers (credit was primarily extended to legacy or existing customers as defendants did not generate much new business), Taylor would then collect the credit application, sign it, and submit the application to Hodge for review and approval. *Every credit application and every credit line increase submitted required Hodge's review and approval*. Taylor had no independent authority or discretion with respect to credit lines – the decision maker was Hodge. Taylor only followed the process and procedure that was in place for many years prior to his employment regarding defendants' credit process. Defendants' allegation that Taylor had exercised discretion and independent judgment regarding the extension of credit and credit amounts, had discretion to make modifications to requested credit extension terms, require customers to make an initial payment up front, provide for a higher interest rate (defendants didn't charge interest during my employment), recommend an extension for a shorter period of time, is a willful misrepresentation of the facts. *See Letter at 3.* Ex.1. Hodge approved all

- 6 -

credit applications and extensions except for those over $1 million which required ITOCHUS' approval.

**Releasing of Orders**

16. As defendant admits in their Letter at 3, *"Ideally company policies, by definition should rarely be overriden"*. Taylor agrees – which is why Taylor followed well established policies regarding releasing orders. Per company policy Taylor would only release orders if the customer paid or if there was a promise to pay ("that was the policy"). Hodge and Nishikawa at all times had the authority to amend the release policy depending on the customer's circumstance. Taylor had no authority to override the release policy, nor did Taylor have any authority to direct a Product Manager to assist with the collection of overdue AR. Sales/Productions Managers rarely got involved with collections. Letter at 3-4. Ex.1

**Performance Improvement Plan ("PIP")**

17. Defendant put Taylor on a PIP when they believed he violated the credit policies of ITOCHU. This undercuts defendants' argument that Taylor had independent authority and discretion regarding credit policies. Letter at 3-4. See PIP, dated June 20, 2022, items 3, 3a, and 3b which states the following (See Ex.2):

*3. Texmac is required to follow the credit policies of our parent company ITOCHU. We have seen evidence that 1) we have invoiced customers even though they were over their limits 2) We have allowed shipments to go out even though the customers are past due.*

*a) If the customer is over their credit limit, we need to re-evaluate the credit limits for the customer.*

*b) If the customer is past due, we need to get some resolution before allowing shipments to go out.*

- 7 -

**Credit Violations.**

18. Taylor was reprimanded by Nishikawa and Hodge on or about June 2022, because of a credit analysis Hodge completed on or about April 15, 2022, that yielded multiple alleged credit violations cited but ITOCHU. Hodge emailed Taylor and requested that he review the accounts in question and correct the credit lines. Nishikawa scolded Taylor for more than an hour in Hodges office, regarding the alleged credit violation, and was concerned that he could not offer ITOCHU a reasonable explanation for the "credit violations" and demanded that Taylor assure him that company policy would be followed moving forward. This is another example that Taylor had no inherent independent judgment or decision-making authority regarding credit policies and procedures. Defendant refused to produce documents relating to Taylor's termination, and credit violations to the U.S. Department of Labor. Letter at 4 – 5. Ex.1.

**Directly Related to Management or General Business Operations**

19. To meet the "directly related to management or general business operations" requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example from working on a manufacturing production line or selling a product in a retail or service establishment. Work "directly related to management or general business operations" includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations; government relations; computer network, Internet and database administration; legal and regulatory compliance; and similar activities. Taylor's duties were in no way related

- 8 -

to Management or General Operations. Taylor was not a Credit Manager (he was misclassified), he never sold machinery or parts to Texmac customers, made no recommendations regarding how much money to extend to customers, he only followed established policy. There is no evidence that Taylor is part of defendants' management or that he assists "with the running or servicing of the business." 29 C.F.R. § 541.201(a). Defendants' allegations have no foundation in law or fact, and such allegations continue to be a willful misrepresentation of the truth.

**Excel Spreadsheets**

20. The excel spreadsheets further support Taylor's argument that Hodge was the decision maker regarding credit policies and Taylor followed said policies which is evidenced in the attached spreadsheet where Taylor received a promise to pay, then asked Hodge to review the order for release – if Taylor had independent authority and discretion, there would be no need for him to ask Hodge to review and release a $303.32, order. The spreadsheet is continued evidence that Taylor was expected to follow policy regarding defendants' credit process and belies the argument that Taylor had the ability of override defendants' credit policies. See Letter at 4, and Spreadsheet marked as Ex.3.

**Employer's Customers**

21. An employee may qualify for the administrative exemption if the employee's primary duty is the performance of work directly related to the management or general business operations of the employer's customers. Thus, employees acting as advisors or consultants to their employer's clients or customers — as tax experts or financial consultants, for example — may be exempt. Taylor had no such interactions with defendants' customers.

**Exercise of Discretion and Independent Judgment**

22. In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered. The term must be applied in the light of all the facts involved in the employee's particular employment situation and implies that the employee has authority to make an independent choice, free from immediate direction or supervision. Factors to consider include, but are not limited to: whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval, and other factors set forth in the regulation. The fact that an employee's decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment.

> The exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources. See 29 CFR 541.202(C), attached as Ex.4.

Taylor had no such discretion or independent authority. He applied well-established procedures and policies while exercising his daily job duties while employed by defendants'.[1]

---

[1] It's worth noting that while citing the USDOL's regulation on discretion and independent judgment. Defendant conveniently omitted the final paragraph that clearly states: *The exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources.*

- 10 -

### Micromanagement

23. On September 20, 2022, Taylor was summoned to a meeting in Hodge's office. During the meeting Hodge reminded Taylor of Working Hours, PTO Policy, Work From Home Policy, Provided Taylor with a Work From Home Approval Form, and a Work From Home Time Log so Taylor could write down each duty he performed while working from home. See Ex.5 (Docs 1-5), attached to Taylor's September 22, 2022, race discrimination complaint attached hereto. A fact finder could conclude that it is not reasonable to believe that an employee under such micromanagement and scrutiny exercised independent judgment and decision-making authority.

### Matters of Significance

24. The term "matters of significance" refers to the level of importance or consequence of the work performed. An employee does not exercise discretion and independent judgment with respect to matters of significance merely because the employer will experience financial losses if the employee fails to perform the job properly. Similarly, an employee who operates very expensive equipment does not exercise discretion and independent judgment with respect to matters of significance merely because improper performance of the employee's duties may cause serious financial loss to the employer. As a low-level accounts receivable representative. Taylor exercised no power to affect matters of significance. In fact, defendant did not hire anyone to replace Taylor, but have instead moved Taylor's duties to employees that have no background in credit and collections. This bolsters Taylor's claim that his position was low level and possessed no inherent independent authority regarding management or independent discretion and authority.

- 11 -

### History of Employee Misclassifications

25. Defendant has a long history of misclassifying employees. Rick Baker ("Baker") was Taylor's predecessor was employed by defendant for more than 15 years before retiring in May of 2020. Baker was also given the title of "Credit Manager", although he managed no employees.[2]

### Outside Sales Representatives

26. Taylor believes that defendant has a practice and pattern of misclassifying SR and possibly other employees. For instance, defendant has misclassified inside SR representatives as outside SR, despite the fact the so-called outside SR representative rarely sale product outside the office or their home office. Defendant's own definition of an "Outside SR" is evidence of their misunderstanding and is inconsistent with the definition that the USDOL has provided. See defendants' definition and the USDOL definition. Ex. 5 and 6. Defendant literally ignored Taylor's DOL complaint regarding violations. See race discrimination and USDOL complaint attached as Ex.7

### Taylor has not waived his wage claims pursuant to FLSA and the NCWHA

27. The law is settled that "FLSA rights cannot be abridged by contract or otherwise waived because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate." *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 388 (6th Cir. 2016) (quoting *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740, 101 S. Ct. 1437 (1981)). The FLSA was enacted to protect workers from substandard wages and oppressive working hours. Barrentine, 450 U.S. at 739. Because there are often great

---

[2] Defendants continue to willfully misclassify Taylor as a credit manager in their letter to the USDOL although they understand Taylor's position did not satisfy an executive exemption. Letter at Ex.1.

- 12 -

inequalities in bargaining power between employers and employees, Congress made the FLSA's provisions mandatory. Thus, they are not subject to negotiation or bargaining between employers and employees. *Lynn's Food Stores, Inc. v. U.S. Dept. of Labor*, 679 F.2d 1350, 1352 (11th Cir. 1982) (citing *Brooklyn Savings Bank v. O'Neill*, 324 U.S. 697, 65 S. Ct. 895 (1945)). As a result, many courts have held that a back wage claim arising under the FLSA can only be settled compromised in two ways: *supervision by the Department of Labor or a stipulated judgment entered by a court that "has determined that a settlement proposed by an employer and employee, in a suit brought by the employer under the FLSA, is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." Id. at 1355; see also Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 203 n.4 (2d Cir. 2015) (noting that the <u>Fourth</u>, Seventh, and Eighth Circuits agree with Lynn that a waiver of a FLSA claim in a private settlement is invalid).*

      The policy mandates of the NCWHA, the regulations of the North Carolina Department of Labor stating that "judicial and administrative interpretations and rulings established under the federal law [shall serve] as a guide for interpreting the North Carolina law," 13 N.C. Admin. Code 12.0103, the well-established precedent in the state and federal courts of North Carolina that the FLSA guides interpretation of the NCWHA, *see, e.g., Miller v. Colorcraft Printing Co.*, No. 3:03-CV-51-T, 2003 U.S. Dist. LEXIS 20702, 2003 WL 22717592, at *3 (W.D.N.C. Oct.16, 2003), and the principle that waivers which "transgress public policy" are not permitted, *Bd. of Managers of James Walker Mem'l Hosp. of Wilmington v. City of Wilmington*, 237 N.C. 179, 74 S.E.2d 749, 757 (N.C.1953), <u>together indicate that employers in this state should not be able to require their employees to waive wage and hour claims through general releases, either under federal or state law.</u>

- 13 -

**Retaliation**

28. "To establish a prima facie case of retaliation. A plaintiff must show (1) that he engaged in a protected activity under the FLSA, (2) that his employer took an adverse action against him and (3) that there was a causal link between the two events. *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 217 (4th Cir. 2016). There is no question that Taylor satisfies three of these prongs because he engaged in a FLSA-protected activity by making it known that he would be taking legal action by filing this case; he notified defendant by advising their counsel via email, and in response, <u>defendant's counsel threatened Taylor by stating defendant would seek all attorney's fees and cost incurred should Taylor file and prosecute what defendant described as a meritless Complaint</u>. See email attached as Ex.8. It's clear based on the evidence presented thus far that the defendant knew Taylor's allegations were anything but frivolous. Thus, the only question is whether Taylor's allegations satisfy the third element. Threatening legal action against a former employee can constitute a "materially adverse action" that "could well dissuade a reasonable worker from making or supporting a FLSA claim." *Cruz v. Don Pancho Market, LLC*, 167 F. Supp. 3d 902, 911 (W.D. Mich. 2016) *(citations omitted)*. While not all legal action by employers can be the basis of a retaliation claim, threatening legal action that is not brought in good faith but instead is motivated by retaliation, can be a basis for a claim of retaliation. Here, Taylor's allegations are sufficient to satisfy the materially adverse action element. Threatening Taylor with legal action because he is pursuing claims under the FLSA, is nothing more than an act of intimidation. It is certainly plausible that threatening drastic relief, including attorney's fees and cost, was sent with the sole purpose of dissuading Taylor from pursuing his claims. In addition, defendant is well aware that Taylor was misclassified, and wage claims cannot be waived. Despite being "well

- 14 -

aware" of this, defendant threatened Taylor anyway. It is indisputable that defendant acted in bad faith by threatening Taylor despite their knowledge of the law. Accordingly, defendant is liable for retaliation.

**Motion to dismiss**

29.     Should defendant file a frivolous motion to dismiss. Taylor asks the court to keep the following standard in mind: The district court's dismissal of a complaint under *Federal Rule of Civil Procedure 12(b)(6). E.I. du Pont de Nemours, 637 F.3d at 440. Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).* When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff. *E.I. du Pont de Nemours, 637 F.3d at 440; see also Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians, 155 F.3d 500, 505 (4th Cir. 1998) (explaining that federal "pleading standards require the complaint be read liberally in favor of the plaintiff").* To survive a motion to dismiss, Plaintiffs' factual allegations, taken as true, must "state a claim to relief that is plausible on its face." *Robertson v. Sea Pines Real Estate Co., 679 F.3d 278, 288 (4th Cir. 2012) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ).* The plausibility standard is not a probability requirement, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).* Although it is true that "the complaint must contain sufficient facts to state a claim that is plausible on its face, it nevertheless need only give the defendant fair notice of what the claim is and the grounds on which it rests."

*Wright*, 787 F.3d at 263 *(internal quotation marks and citations omitted)*. Thus, we have emphasized that "a complaint is to be construed liberally so as to do substantial justice." Id.

30. **Overtime Calculation**

To state a plausible FLSA overtime claim, Taylor "must provide sufficient detail about the length and frequency of his unpaid work to support a reasonable inference that he worked more than forty hours in a given week." *Nakahata v. N.Y.– 16 Hall v. DirecTV, LLC 846 F.3d 757 (4th Cir. 2017) Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013). Taylor may meet this initial standard "by estimating the length of his average work week during the applicable period and the average rate at which he was paid, the amount of overtime wages he believes he is owed, or any other facts that will permit the court to find plausibility." *Landers*, 771 F.3d at 645 *(emphasis added) (citing Pruell, 678 F.3d at 14 ); see also Davis*, 765 F.3d at 243 *(explaining that "a plaintiff's claim that she 'typically' worked forty hours per week, worked extra hours during such a forty-hour week, and was not compensated for extra hours beyond forty hours he or she worked during one or more of those forty-hour weeks, would suffice" (emphasis in original))*. Here, Taylor alleges that he worked an average of 45 - 48 hours per week for 3 years and was not paid overtime. Finally, according to FLSA, employers are required to keep accurate record keeping. Ex.9.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands:

a) Judgment against Defendant for an amount equal to Plaintiff's unpaid back wages at the applicable overtime rate for each hour worked over forty hours;

b) Judgment against Defendants for willful violations of the FLSA;

c) An equal amount to the wage damages as liquidated damages;

- 16 -

d) To the extent that liquidated damages are not awarded, an award of prejudgment interest;

e) All costs incurred and reasonable attorney's fees for prosecuting these claims;

f) An award of attorney fees and cost;

f) For such further relief as the Court deems just and equitable.

RESPECTFULLY SUBMITTED,

This _20_ of November 2023

_____
Billy Taylor, Plaintiff